Todd M. Friedman (SBN 216752)
tfriedman@toddflaw.com
Adrian R. Bacon (SBN 280332)
abacon@toddflaw.com
Law Offices of Todd M. Friedman, P.C.
21550 Oxnard St., Suite 780
Woodland Hills, CA 91367-7104
Telephone: 877-206-4741
Facsimile: 866-633-0228
*Counsel for Plaintiff*

Manuel S. Hiraldo
Hiraldo P.A.
*Pro Hac Vice*
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
mhiraldo@hiraldolaw.com
Telephone: 954.400.4713

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALLISON FEJERAN, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> FIVE STARS LOYALTY, INC., and DOES 1 through 10, inclusive, and each of them, <br><br> Defendant. | Case No. 3:18-cv-01490-JD <br><br> **CLASS ACTION** <br><br> **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, ET SEQ.** <br><br> **DEMAND FOR JURY TRIAL** |

1   ///
2   ///

### FIRST AMENDED CLASS ACTION COMPLAINT[1]

Plaintiff Allison Fejeran brings this class action against Defendant Five Stars Loyalty, Inc., and alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### NATURE OF THE ACTION

1.      This putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA"), stems from Defendant's knowing and willful violations of the TCPA.

2.      The case arises from the transmission of text messages to the cellular telephones of Plaintiff and members of the class for the purpose of promoting Defendant's services and mobile application.

3.      Defendant operates a rewards and marketing program through a mobile application. To drum-up new business and encourage consumers to download its application, Defendant engages in intrusive telemarketing campaigns.

4.      Defendant is well-aware of the restrictions imposed by the TCPA, and has been previously sued for violating the TCPA.

---

[1] On May 14, 2018, Defendant filed a Motion to Dismiss Plaintiff's Complaint ("Motion to Dismiss") pursuant to Federal Rule of Civil Procedure 12(b)(6). [ECF NO. 18].  Pursuant to Fed. R. Civ. P. 15(a)(1), Plaintiff hereby amends her complaint as a matter of course thereby mooting Defendant's Motion to Dismiss.

5.      Nevertheless, Defendant engages in illegal telemarketing, targeting individuals nationwide, without their prior express consent and little regard for their privacy.

6.      Through this putative class action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals nationwide.  Plaintiff also seeks statutory damages on behalf of himself and members of the class, and any other available legal or equitable remedies resulting from the illegal actions of Defendant.

## JURISDICTION AND VENUE

7.      This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

8.      Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(1), because Defendant resides in this District.

9.      The Court has personal jurisdiction over Defendant because it conducts business in this state, and its principle place of business is in this District.

## PARTIES

10.      Plaintiff is a natural person who, at all times relevant to this action, was a resident of the State of Texas.

11.      Defendant is a Delaware limited liability company whose principal office is located at 340 Bryant St #300, San Francisco, CA 94107.  Defendant directs,

markets, and provides its business activities throughout the United Stated.

## THE TELEPHONE CONSUMER PROTECTION ACT

12.     The TCPA regulates and restricts the use of automatic telephone equipment.

13.     The TCPA protects consumers from unwanted calls that are made with autodialers and/or prerecorded messages.

14.     The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system or prerecorded message; (3) without the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(A).

15.     The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

16.     In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

17.     The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.  According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live

solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

18.      In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express **written** consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012)(emphasis supplied).

19.      To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

20.      The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).      In determining whether a communication constitutes

telemarketing, a court must evaluate the ultimate purpose of the communication.  *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

21.   "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'"  *Id.* (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

22.   "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services."  *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12);  *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

23.   The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA.  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003).  This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*. *Id.*

24.   In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA.  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

25.      If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

26.      "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp., LLC*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. Jan. 30, 2017) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016), as revised (May 24, 2016)) (emphasis in original).

## FACTS

27.      On or about January 16, 2018, Defendant using an automated text-messaging platform, caused the following text message to be transmitted to Plaintiff's cellular telephone:

28.      Defendant's text message constitutes telemarketing because it promotes Defendant's goods and services, including its mobile application.

29.      The hyperlink contained within the text message (fivestars.com) is a link to Defendant's website, where Defendant promotes its good and services, including its mobile application as depicted below.

8






30.     At no point in time did Plaintiff provide Defendant with her express written consent to be contacted by text messages using an ATDS.

31.     At no point in time did Plaintiff provide Defendant with her express consent to be contacted by text messages using an ATDS.

32.     At no point in time did Plaintiff provide Yummie Street Food with her express written consent to be contacted by text messages using an ATDS.

33.     At no point in time did Plaintiff provide Yummie Street Food with her express consent to be contacted by text messages using an ATDS.

34.     Plaintiff has never had any type of relationship with Defendant.

35.     Plaintiff has never had any type of relationship with Yummie Street

Food.

36.      Plaintiff has never provided her telephone number to Defendant.

37.      Plaintiff has never provided her telephone number to Yummie Street Food.

38.      Plaintiff is the subscriber and/or sole user of the cellular telephone number that received the offending text messages.

39.      Upon information and belief, Defendant caused the same or similar text messages to be transmitted to the cellular telephones of consumers throughout the country.  Many recipients of Defendant's text spam have voiced their complaints on the Internet.  A small sample of these complaints are depicted below.

- 578-277 texted me asking to confirm I signed up for "fivestars, the reward program for local businesses". No I didn't I don't own a business.

- 578-277 texted me asking to confirm I signed up for "fivestars, the reward program for local businesses. I never sign up with FiveStars. I even don't know what it is.

- It hijacked my text messages. It wouldn't let my messages be delivered and sent the message below to me. Isn't this kind of stuff illegal? Fivestars Alerts: Sorry, please try again or visit support.fivestars.com for help. Std msg&data rates may apply.[2]

40.      The impersonal and generic nature of Defendant's text message establishes that Defendant utilized an ATDS in transmitting the messages.  *See Jenkins*

---

[2] https://800notes.com/Phone.aspx/1-578-277-0000; (last accessed on May 29, 2018).

*v. LL Atlanta, LLC*, No. 1:14-cv-2791-WSD, 2016 U.S. Dist. LEXIS 30051, at *11 (N.D. Ga. Mar. 9, 2016) ("These assertions, combined with the generic, impersonal nature of the text message advertisements and the use of a short code, support an inference that the text messages were sent using an ATDS.") (citing *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1354 (S.D. Fla. 2014) (plaintiff alleged facts sufficient to infer text messages were sent using ATDS; use of a short code and volume of mass messaging alleged would be impractical without use of an ATDS); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding it "plausible" that defendants used an ATDS where messages were advertisements written in an impersonal manner and sent from short code); *Robbins v. Coca-Cola Co.*, No. 13-CV-132-IEG NLS, 2013 U.S. Dist. LEXIS 72725, 2013 WL 2252646, at *3 (S.D. Cal. May 22, 2013) (observing that mass messaging would be impracticable without use of an ATDS)).

41.     Specifically, upon information and belief, Defendant utilized a combination of hardware and software systems to send the text messages at issue in this case.  The systems utilized by Defendant have the current capacity or present ability to store numbers using a random or sequential generator, and to dial such numbers. Additionally, the equipment used by Defendant has the capacity to dial numbers from a list of numbers, automatically without human intervention.

42.     In fact, Defendant admits that it sends automatic marketing offers on its own website:

## Meet AutoPilot

AutoPilot is the tool at the heart of the Fivestars program, sending your customers the targeted offers they'll love—totally automatically. We designed AutoPilot explicitly for the needs of local businesses (and their time-strapped owners) to deliver the perfectly-timed nudges that get customers coming back and spending more.

43.     Below is another image, wherein Defendant acknowledges that they "automatically send campaigns" through their Autopilot feature including "app notification, **text message**, or email, which is "10x more effective than other **marketing tools.**"



3

44.     In the "Legal" section of its website, Defendant again admits that it uses automated technology to transmit text messages to consumers:  "you agree that we and Rewards Providers may communicate with you by automated SMS, MMS, text message or other electronic means to your mobile device and that information about

---

[3] Fivestars, How It Works, https://www.fivestars.com/businesses/how-it-works/ (last visited March 7, 2018).

your usage of the Mobile Services may be communicated to us."

45.     Defendant's unsolicited text messages caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.  Defendant's text messages also inconvenienced Plaintiff and caused disruption to her daily life.

## CLASS ALLEGATIONS

### PROPOSED CLASS

46.     Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and all others similarly situated.

47.     Plaintiff brings this case on behalf of a Class defined as follows:

> **All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message, from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number, for the purpose of promoting Defendant's and/or Defendant's clients' property, goods, and/or services, without their prior express written consent.**

48.     Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the several thousands, if not more.

### NUMEROSITY

49.     Upon information and belief, Defendant has placed automated calls to cellular telephone numbers belonging to thousands of consumers throughout the United

States without their prior express consent.  The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

50.     The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery.  Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

## COMMON QUESTIONS OF LAW AND FACT

51.     There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

(1) Whether Defendant made non-emergency calls to Plaintiff's and Class members' cellular telephones using an ATDS;

(2) Whether Defendant can meet its burden of showing that it obtained prior express written consent to make such calls;

(3) Whether Defendant's conduct was knowing and willful;

(4) Whether Defendant is liable for damages, and the amount of such damages; and

(5) Whether Defendant should be enjoined from such conduct in the future.

52.     The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely violates the TCPA is correct, Plaintiff and the Class members will have identical claims capable of being efficiently

14

adjudicated and administered in this case.

## TYPICALITY

53.      Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

## PROTECTING THE INTERESTS OF THE CLASS MEMBERS

54.      Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

## PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

55.      A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

56.      The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of

conduct for Defendant.   For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not.   Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(b)
**(On Behalf of Plaintiff and the Class)**

57.      Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

58.      It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a…cellular telephone service…." 47 U.S.C. § 227(b)(1)(A)(iii).

59.      "Automatic telephone dialing system" refers to any equipment that has the "capacity to dial numbers without human intervention." *See, e.g., Hicks v. Client Servs., Inc.*, No. 07-61822, 2009 WL 2365637, at *4 (S.D. Fla. June 9, 2009) (citing FCC, In re: Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991: Request of ACA International for Clarification and Declaratory Ruling, 07–232, ¶ 12, n.23 (2007)).

60.      Defendant – or third parties directed by Defendant – used equipment having the capacity to dial numbers without human intervention to make non-emergency

telephone calls to the cellular telephones of Plaintiff and the other members of the Class.

61.     These calls were made without regard to whether Defendant had first obtained express written consent to make such calls. In fact, Defendants did not have prior express written consent to call the cell phones of Plaintiff and Class Members when the subject calls were made.

62.     Defendant violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express consent.

63.     As a result of Defendant's conduct, and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls.

**WHEREFORE**, Plaintiff, Allison Fejeran, on behalf of herself and the other members of the Class, pray for the following relief:

a.  A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b.  A declaration that Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, were willful and knowing;

c.  An injunction prohibiting Defendant from using an automatic telephone dialing system to call and text message telephone numbers assigned to

17

cellular telephones without the prior written express permission of the called party;

c.  An award of actual and statutory damages; and

d.  Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff and Class Members hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone or fax numbers associated with the Defendant and the communication or transmittal of advertisements as alleged herein.

///

///

Date: May 29, 2018

Respectfully submitted,

*/s/ Todd M. Friedman*

Todd M. Friedman (178303)
TFriedman@ToddFlaw.com
Law Offices of Todd M.
Friedman, P.C.
21550 Oxnard St., Suite 780
Woodland Hills, CA 91367-
7104
Telephone: 877-206-4741
Facsimile: 866-633-0228
*Counsel for Plaintiff*

Manuel S. Hiraldo
*Pro Hac Vice*
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
mhiraldo@hiraldolaw.com
Telephone: 954.400.4713
*Counsel for Plaintiff*

Filed electronically on this 29th Day of May, 2018, with:

United States District Court CM/ECF system.

Notification sent electronically on this 29th Day of May, 2018, to:

Honorable James Donato
United States District Court
Northern District of California

And All Counsel of Record as Recorded On The Electronic Service List


/s/ Todd M. Friedman, Esq.
TODD M. FRIEDMAN